# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ESTATE OF GREGORY V. FAULL,**

            **Plaintiff,**

**v.**                                                   **Case No:   6:13-cv-1746-Orl-31KRS**

**JOHN MCAFEE,**

            **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S DISPOSITIVE MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JOHN MCAFEE ON THE ISSUE OF LIABILITY (Doc. No. 82)** |
| **FILED:** | **July 27, 2016** |

## I.   PROCEDURAL HISTORY.

      On November 8, 2013, Plaintiff, the Estate of Gregory V. Faull, by Curt Jacobus, Esq., his duly appointed personal representative,[1] filed a complaint against Defendant, John McAfee,[2] alleging claims under Florida's Wrongful Death Act, and claims for common law negligence,

---

[1] References herein to Plaintiff will refer to Jacobus in his capacity as personal representative for Faull's Estate.

[2] Samantha Vanegas and Amy Herbert were named as Defendants in the original complaint and in the subsequently-filed first amended complaint.   After Plaintiff was unable to effect service on Vanegas and Herbert, Plaintiff voluntarily dismissed his claims against them without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).   Doc. Nos. 46, 47.

intentional battery resulting in injury in death, and punitive damages.   Doc. No. 1.   After the Court issued an Order to Show Cause why the case should not be dismissed for lack of subject-matter jurisdiction, Doc. No. 6, Plaintiff filed an amended complaint, Doc. No. 12, alleging facts necessary to establish diversity jurisdiction.[3]   *Accord* Doc. No. 13 ¶ 3.   In December 2014—after being granted three extensions of time to effect service—Plaintiff served a copy of the summons and amended complaint on Defendant McAfee.   *See* Doc. No. 39.   Plaintiff subsequently filed a motion for entry of clerk's default against McAfee, Doc. No. 40, and a clerk's default was entered against McAfee on January 27, 2014, Doc. No. 41.

On June 16, 2015, Plaintiff filed a motion requesting that the Court determine that Defendant McAfee was liable under each cause of action alleged.   Doc. No. 50.   The Court denied the motion because, as relevant here, Plaintiff's allegations were too vague and conclusory to sustain a default judgment against McAfee as to the wrongful death claim.   Doc. No. 55.[4]   The Court did, however, grant Plaintiff leave to file a second amended complaint.   *Id.*

On October 27, 2015, Plaintiff filed a second amended complaint, alleging a claim under Florida's Wrongful Death Act against McAfee.   Doc. No. 57.[5]   On January 22, 2016, I granted Plaintiff's motion for an order directing the U.S. Marshals Service to serve McAfee with a copy of the summons and second amended complaint.   Doc. No. 66.   On February 11, 2016, I granted Plaintiff's fourth motion for additional time to serve McAfee and extended the date for service up to and including April 11, 2016.   Doc. No. 68.

---

[3] The Order to Show Cause concerning subject-matter jurisdiction was discharged on December 11, 2013.   Doc. No. 15.

[4] I recommended that the motion be denied as to Plaintiff's other claims, too, but Plaintiff did not object to that recommendation and did not include them in his second amended complaint.

[5] This document is actually the "Amended Second Amended Complaint." Plaintiff filed his original second amended complaint on October 26, 2015, Doc. No. 56, but the document had to be re-filed because counsel incorrectly included Samantha Vanegas and Amy Herbert as parties.

On April 11, 2016, Plaintiff filed a fifth motion for additional time to serve McAfee.   Doc. No. 71.   I denied that motion and ordered Plaintiff to show cause why this case should not be dismissed for failure to serve McAfee as provided in Federal Rule of Civil Procedure 4(m).   Doc. Nos. 72, 73.   Plaintiff responded by contending that service of the second amended complaint was not required because McAfee had already been defaulted and requesting that the Court enter a default judgment against McAfee.   Doc. No. 74.   Because Plaintiff's request for default judgment was not properly stated in a response to an order to show cause, I ordered Plaintiff to file a separate motion for default judgment on or before June 6, 2016.   Doc. No. 75.   I further ordered that the motion should be supported by a memorandum of legal authority that set forth the elements of Plaintiff's claim and showed how the well-pleaded allegations of the second amended complaint established each of those elements.   *Id.* at 2.   Finally, I ordered that the memorandum of legal authority must explain the basis for relying on Florida tort law, the basis for the Court's exercise of personal jurisdiction in this case, and the factual and legal basis for Plaintiff's assertion that service of the second amended complaint was not required because it raised no new or additional claim. *Id.* at 2-3.

On May 31, 2016, Plaintiff filed a Process Receipt and Return showing that the U.S. Marshals Service personally served McAfee with a copy of the summons and second amended complaint while he was in Orlando, Florida.   Doc. No. 78.   After Plaintiff filed the return of service document, I vacated my previous order denying Plaintiff's fifth motion for additional time to serve McAfee to the extent that service upon McAfee would be considered timely in this case. Doc. No. 79.   Upon motion by Plaintiff, the Clerk of Court then entered another default against McAfee. Doc. Nos. 80, 81.

On July 27, 2016, Plaintiff filed the above-captioned renewed motion for default judgment. Doc. No. 82.   The motion seeks a finding that McAfee is liable for violation of Florida's Wrongful Death Act and asks that the Court schedule a pre-trial conference to facilitate the setting of dates for a hearing on Plaintiff's proof of damages.[6]   Plaintiff's renewed motion is now ripe for decision.[7]

## II.   STANDARD OF REVIEW.

A court may find that a defaulted defendant is liable under causes of action alleged in the complaint only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry.   *See Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (emphasis added) ("The defendant is not held to admit facts that are not *well-pleaded* or to admit conclusions of law.").[8]   The Supreme Court has explained that a complaint need not contain detailed factual allegations, "but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation.   A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   Moreover, "where the well-pleaded facts do not permit the court to infer more than

---

[6] Plaintiff attached a copy of Belize's wrongful death act to his motion.   Doc. No. 82, at 26-36. That document is not relevant because I assume, for purposes of this Report & Recommendation, that Florida law applies.   Plaintiff also attached a transcript of a portion of an episode of the television program "Dateline" that relates to this case (*id.* at 37-42), a transcript of an interview with a confidential informant (*id.* at 43-46), a copy of a U.S. Government report regarding human rights practices in Belize (*id.* at 47-55), and an affidavit from one of Plaintiff's attorneys (*id.* at 56-58).   Those documents are not relevant because they relate to Plaintiff's *forum non conveniens* argument, which—as explained below—does not change the conclusion of this Report & Recommendation.

[7] Under Rule 5(a)(2), Plaintiff was not required to serve McAfee with a copy of the motion, but the certificate of service shows that Plaintiff emailed the motion to him.   As of the writing of this Report & Recommendation, McAfee has not filed a response.

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all binding decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the plaintiff is entitled to relief.'"   *Id.* at 769 (quoting Fed. R. Civ. P. 8(a)(2)).   If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible," the complaint fails to state a claim.   *Twombly*, 550 U.S. at 547.

This analysis applies with equal force in the analysis of liability of a defaulted defendant. *DeLotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-cv-2033-Orl-22KRS, 2009 U.S. Dist. LEXIS 110538, at *2–4 (M.D. Fla. Sept. 3, 2009) (citations omitted), *adopted by* 2009 U.S. Dist. LEXIS 110257 (M.D. Fla. Nov. 24, 2009).   In addition, while Rule 11(b)(3) allows a plaintiff to allege factual averments conditionally, "a default does not transform such conditional statements of belief into established facts.   'Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.'"   *Phoenix Entm't Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:16-cv-80-Orl-31DAB, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) (quoting *In re Superior Air Parts, Inc.*, 486 B.R. 728, 741 (Bankr. N.D. Tex. 2012) *aff'd sub nom. Lycoming Eng'rs v. Superior Air Parts, Inc.*, 3:13-CV-1162-L, 2014 WL 1976757 (N.D. Tex. 2014)), *report and recommendation adopted by* 2016 WL 1559164 (M.D. Fla. Apr. 18, 2016).

Finally, the Servicemembers Civil Relief Act ("SCRA") imposes an additional requirement for the entry of default judgment in "any civil action . . . in which the defendant does not make an appearance."   50 U.S.C. § 3931(a).   Specifically, the SCRA provides that the court, "before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit—(A) stating whether or not the defendant is in military service and showing necessary facts to support the affidavit; or (B) if the plaintiff is unable to determine whether or not the defendant is in military

service, stating that the plaintiff is unable to determine whether or not the defendant is in military service." 50 U.S.C. § 3931(b)(1).

## III.  ALLEGATIONS OF THE SECOND AMENDED COMPLAINT.

This lawsuit arises from the murder of Gregory V. Faull, which occurred on or about November 11, 2012, in the Mata Grande area of Ambergris Caye in the nation of Belize. Plaintiff alleges that McAfee participated in the murder and should be held liable for that participation under Florida's Wrongful Death Act.   Plaintiff's renewed motion for default judgment specifically lists the portions of the second amended complaint (Doc. No. 57) that support a finding of liability.   Doc. No. 82, at 23.   Those factual allegations are as follows:[9]

1. This case arises out of the murder of Gregory V. Faull, a/k/a Gregory Faull ("Faull"), on or about November 11, 2012, which took place in the Mata Grande area of Ambergris Caye in the nation of Belize.   Faull's murder was carried out, execution style and Faull was shot once in the head; there were no visible signs of forced entry to the Faull home, and no signs of struggle or robbery.

7. The Personal Representative of the Estate of Gregory Faull, deceased, is Curt Jacobus, Esq., a United States Citizen, residing in Brevard County, Florida. Attached as Exhibit "A" are Letters of Administration, dated October 8, 2013, for In Re: Estate of Gregory V. Faull, Deceased (the "Estate"), issued from Brevard County, Florida, in Probate case #05-2013-CP-071159.

21. Faull had previously rented his home on Ambergris Caye to McAfee for use by McAfee and those working for McAfee, including Dr. Allison Adonizio.   As such, McAfee was familiar with the Faull home and its layout, the grounds and points of home access.

25. After Faull was found dead, McAfee while in hiding, openly acknowledged to the media that he and Faull had been at odds, but played down the idea that they hated each other or that he suspected Faull of being the person who had fed dogs from his property a poisoned tortilla on approximately November 9, 2012.

---

[9] I specifically directed Plaintiff to file a memorandum of law that showed how the well-pleaded allegations of the second amended complaint supported a finding of liability.   Doc. No. 75.   Thus, I confine my discussion to the facts identified by Plaintiff.   All typographical, punctuation, and grammatical errors appear in the original of the second amended complaint.

26. Allison Adonizio, PhD., who had lived on Ambergris Caye at the Faull home while working for McAfee before the murder, and who knew both men well, stated there was bad blood between the two men back then, and "McAfee hated his {Faull's} guts,"

28. As reported by media sources in Belize, McAfee had previously threatened Faull that the next time he set foot on McAfee's property he'd shoot him.   Faull was shot dead shortly thereafter.

32. That same evening of November 10, 2012, and for part of the morning hours of November 11, 2012, upon police investigation and information and belief[10], McAfee, his armed guard employees and several McAfee girlfriends, including Samantha Vanegas, remained at or were located in the vicinity physically near McAfee's Ambergris Caye home located just north next-door to Faull's home.

35. Arriving at Faull's home on the morning hours of November 11, 2012, well before the police, Shane McCann stated that he saw his friend, Greg Faull, inside, on the main floor, lying in a pool of dried blood, his legs straight out, his hands at his side, as if posed.   "It didn't look natural", McCann described; "It looked like someone had laid him there".

36. According to McCann, he observed that Faull's keys were still in the door to his home, and he was still dressed in the clothes he had been wearing the night before while at dinner at the McCann home, though his T-shirt had been pulled up over his head.   "Yeah, it was pulled over, like in a hockey move or something . . . [it] was all the way behind his neck, but his shirt was still on."

37. The <u>Updated Interim Report-Murder-Gregory Faull</u> of the Belize Police Department dated September 19, 2013 states that Faull was found on November 11, 2012 face up in a pool of blood with a white T-shirt over his head, with an apparent gun shot wound to the upper part of Faull's head.   Processing of the scene by Scenes of Crime Technicians, Ms. Arian Reneau revealed a single 9 mm Lugar brand expended shell was found by the step in the sand downstairs at Faull's residence and retrieved.   Blood swabs were retrieved from the hall floor.

38. Police reports reveal that upon finding Faull dead, that the area was immediately canvassed and several persons were interviewed then and that the early information police received was that the deceased Faull had a misunderstanding with his neighbor, John McAfee in regard to McAfee dogs being poisoned.

40. Faull's body was taken to Karl Heusner Memorial Hospital (KMHM) Morgue, where on November 20, 2012 at 2:00 p.m., Faull's body underwent a Post Morten Examination.   In addition to the bullet hole in the head, embedded in Faull's

---

[10]  Although this paragraph may partially be based "upon information and belief," I have included it because it appears to be at least partially supported by a police investigation.

scalp was a portion of a long fingernail.   The fingernail has been preserved as evidence by police, and retained for DNA analysis together with the slug for ballistics analysis.

41. The cause of Faull's death was determined by the Post-Mortem examination on the body of Gregory Faull to be traumatic shock due to massive brain damage due to head injury as a consequence of gun shot wound.

42. Members of the Belize Police authorities have confirmed signs of multiple sites of Taser-inflicted torture to Faull's body, including evidence by skin marks of Taser firing to his scrotum.   These Taser firing marks were also seen at autopsy.

43. Prior to Faull's death, McAfee had personally used a Taser to discipline his dogs on several witnessed occasions while Faull and McAfee were each living on Ambergris Caye.

45. Belize police and law enforcement teams starting November 11, 2012, engaged in five (5) separate surprise assaults on the McAfee home and property in the hours and days after the murder discovery, in an effort to find and question McAfee about Faull's murder.  Each time, police investigators were unable to locate McAfee who had suddenly vanished.

46. In a Wired article published after the Faull murder, Joshua Davis, a Wired reporter wrote that McAfee had confided to Davis that after the death of Faull, he, McAfee had seen the officers approaching and had hidden in the sand of his property putting a cardboard box over his head.

47. McAfee knew he was being sought for questioning about the murder of Faull. The day after he disappeared from his Ambergris Cay residence, and on or about November 12, 2012, McAfee launched a personal media blitz, blogging, emailing and calling journalists from undisclosed locations to insist that he had nothing to do with the murder of Faull, and to claim that the would likely die in custody if he turned himself in.

48. On November 19, 2012, John McAfee posted an internet blog, entitled "Watchfulness" describing his run from the Faull murder investigation with "Sam" (Samantha Vanegas) and his knowledge that he was being sought.

52. The Head of the Belize Gang Suppression Unit (GSU) Mark (Marcos) Vidal confirmed to the San Pedro Sun newspaper on Ambergris Caye shortly after the Faull murder was discovered that they were looking for McAfee as part of the Faull murder investigation Vidal was reported by Belize media to have named McAfee as primary suspect in the case.

58. Police in Belize in November and into December, 2012 engaged in a full-scale national search for John McAfee, but were unable to locate him or to detain him

for questioning about the Faull murder before he escaped from the jurisdiction of Belize and crossed the border illegally into Guatemala in December, 2012.

59. During his ultimate escape from Ambergris Caye, McAfee openly has described that while in hiding, that he had "radically" altered his appearance in order to elude the local police.  McAfee was reported as saying, ". . . You know, people saw my photograph everywhere because all of the police and army had it for that month and a half I was underground".   McAfee also utilized false identification during his escape to hide his true identity.

63. McAfee was ultimately released from Guatemala custody in December, 2012 to travel by public aircraft to Miami, Florida, U.S.A., but only after admittedly faking a heart attack or other illnesses while he was still in Guatemala detention to avoid his anticipated deportation and return to Belize where authorities awaited him for the murder investigation questioning.

64. Belize police continue to maintain that John McAfee is still a person of interest in the murder of Gregory Faull, while stating that police have been unable to question McAfee in Belize after the murder, or to date, because he ran away and left Belize.   No one else but John McAfee is currently named by Belize police authorities as a person of interest in the Faull murder investigation.

66. By the time of the shooting death of Faull, a dispute of a very intense and personal nature between Faull and McAfee existed.   It began to escalate again immediately before Faull's murder, all as described above.

73. McAfee left the Faull residence and dug into the sand, on or near his property, and created a safe place to hide himself and to escape police detection, but giving him access to viewing police and others searching for him.

74. He covered his head and body with sand-colored cardboard with sufficient ventilation holes for him to breathe and Samantha sprinkled sand over the top to hide his location, and to help him avoid detection and she left.

75. McAfee has never invited his questioning, nor made himself available to the Belize police investigating authorities to question him here once in the USA about his role in and knowledge about the November 2012 assault, torture and murder of Gregory V. Faull.

The remaining allegations are stated on information and belief (emphasis added in each allegation):

67. *Upon information and belief*, McAfee and his group left their residence in the dark, surprised and set upon Faull, who had just arrived home from the McCann's party and who had reached the area of the hallway of his home.   Faull had

already put his house key back in the inside lock of his home door at the time he was attacked.

68. *Upon information and belief*, McAfee, Vanegas and the others with him entered the Faull residence, and conspiring together, caught Faull in an unguarded moment, and they began shocking Faull with a Taser "stun gun(s)", to immobilize him, and to teach Faull a frightening, painful and an ultimately fatal lesson for allegedly poisoning the McAfee dogs some hours earlier, and in consideration of the bad blood that existed between McAfee and Faull..

69. *Upon information and belief*, as he had done before during the 2011 Orange walk area beating of the Carmelita Village victim, McAfee again watched the entire episode of physical assault with battery and the fatal injury by gunshot wound inflicted on Faull while McAfee was present in Faull's home.

70. *Upon information and belief*, in the fleeting moments of Faull's life, Faull recognized McAfee as personally in charge of his assailants and in the same room in Faull's home watching, and that McAfee was giving orders and directing Faull's injuries, torture and death.

71. *Upon information and belief*, McAfee shot and killed Faull by a bullet into Faull's head.  Alternatively, McAfee verbally directed that Samantha do so for him, or when she asked to be allowed to fire the kill-shot, McAfee approved Samantha to shoot Faull with a 9mm or other handgun placing a bullet into Faull's head which she did, killing Faull.

72. A portion of a human fingernail, other than his own, was found post-mortem left in Faull's scalp at the time of his death that night, *upon information and belief*, the fingernail was likely placed there in an act of grasping rage to hold back Faull's head immediately before the fatal bullet was fired into his skull.

## IV.  DISCUSSION.

### A.  *Service of Second Amended Complaint and Personal Jurisdiction.*

In directing Plaintiff to file a renewed motion for default judgment, I required that a renewed motion for default judgment address two threshold issues: (1) whether the Court could exercise personal jurisdiction over McAfee; and (2) whether Plaintiff was excused from serving McAfee with the second amended complaint because it did not add any new claims against McAfee.  Doc. No. 75.  Thus, I address these two issues before considering the issue of liability.

As evidenced by the Process Receipt and Return filed by Plaintiff on May 31, 2016, the U.S. Marshals Service personally served McAfee with a copy of the summons and second amended complaint while he was in Orlando, Florida.   Doc. No. 78.   This is sufficient to meet Rule 5(a)(2)'s requirement that a pleading that asserts any new claim for relief against a party who is in default for failing to appear be served on that party under Rule 4.   In addition, personal service of McAfee in Florida is sufficient to give this Court personal jurisdiction over him.   *See Durkee v. Durkee*, 906 So. 2d 1176, 1177 (Fla. 4th Dist. Ct. App. 2005) (citing, among others, *Garrett v. Garrett*, 686 So. 2d 991, 994-95 (Fla. 1996) (Wells, J., concurring); *Burnham v. Superior Court of Cal.*, 495 U.S. 604 (1990)).

   B.   *Compliance with Servicemembers Civil Relief Act.*

   Before turning to liability, I address one final preliminary issue.   As noted above, the SCRA forbids a court from entering a default judgment against an individual defendant who has not appeared unless the plaintiff files an affidavit stating whether or not the defendant is in the military service or files an affidavit stating that the plaintiff is unable to determine whether or not the defendant is in the military service.   50 U.S.C. § 3931(b)(1).   Plaintiff has not complied with this requirement,[11] which alone would justify denying the motion for default judgment without prejudice.   *See, e.g.*, *Hall v. Colicchio*, No. 6:14-cv-1467-Orl-31TBS, 2015 WL 3866099, at *3 (M.D. Fla. June 22, 2015) (noting that default judgment should not be entered against individual defendant because plaintiff had not complied with SCRA).   Because this deficiency could be cured by filing an affidavit prior to the entry of judgment, however, I address the merits of Plaintiff's renewed motion for default judgment.

---

[11] Information about a defendant's military status is often included in the affidavit of service, but neither document proving service in this case contains such information.   Doc. Nos. 39, 78.

C.  *Liability.*

The Florida Wrongful Death Act, Fla. Stat. §§ 768.16-.26, "provides for a cause of action that may be brought by a decedent's personal representative when the decedent's death is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person . . . , 'and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued.'"  *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 758 (Fla. 2013) (quoting Fla. Stat. § 768.19).   In the second amended complaint, Plaintiff alleges that McAfee violated Florida's Wrongful Death Act through battery.[12]  In the renewed motion for default judgment, Plaintiff argues that Florida law should apply to this action, despite the fact that all the underlying events occurred in Belize.[13]   Because I conclude that the second amended complaint fails to support the entry of default judgment against McAfee even when considered under Florida law, the rest of this analysis assumes, without deciding, that it is appropriate to apply Florida law in this case.

To allege a battery adequately under Florida law, the plaintiff must allege that the defendant intentionally inflicted harmful or offensive contact upon the person of another, and that the defendant took some positive or affirmative act which caused, or was intended to cause, an unpermitted contact.  *Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*, 454 So. 2d 52, 54 (Fla. 4th Dist.

---

[12]  The battery theory does not appear on the face of the second amended complaint, and Plaintiff's renewed motion for default judgment makes passing references to other theories (e.g. negligence and intentional infliction of emotional distress, *see* Doc. No. 82, at 21-22); however, it appears from other portions of Plaintiff's motion that the claim is intended to be one for battery (*id.* at 20).

[13]  Plaintiff also argues at length that this action should not be dismissed based on the *forum non conveniens* doctrine.  Doc. No. 82, at 6-18.  Much of that discussion is irrelevant to this Report and Recommendation because the Court did not ask Plaintiff to brief the issue and McAfee has not appeared to raise the issue of forum.  Regardless, it does not appear that it would be appropriate for the Court to dismiss Plaintiff's second amended complaint *sua sponte* on *forum non conveniens* grounds because Eleventh Circuit case law appears to require an explicit finding that the defendant is either "amenable to process" in the alternative forum or willing to consent to jurisdiction there.  *See Estate of Miller v. Toyota Motor Corp.*, 6:07-cv-1358-Orl-19DAB, 2007 WL 4482589, at *5 n. 5 (M.D. Fla. Dec. 18, 2007) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 865 (11th Cir. 2007); *La Seguridad v. Transytur Line*, 702 F.2d 1304, 1307 (11th Cir. 1983)).   No such showing has been made in this case.

Ct. App. 1984) (citations omitted).   The question for the Court, then, is whether the well-pleaded allegations of the second amended complaint adequately state a plausible claim for battery.   I recommend that the Court find that they do not.

As explained above, allegations made on information and belief that do not contain any factual support fail to meet the *Twombly* standard. *Phoenix Entm't Partners, LLC*, 2016 WL 1567590, at \*5.   In the second amended complaint, all of the allegations of ultimate fact—that is, those that relate to McAfee's participation in the alleged murder of Faull—are made "upon information and belief" and without factual support.[14]   Thus, they must be disregarded for purposes of determining whether the second amended complaint states a claim.   Once these paragraphs—Paragraphs 67-72—are eliminated, all that remains is the following narrative: (1) prior to Faull's death, McAfee and Faull were engaged in an intense dispute, and McAfee had threatened to shoot Faull if he set foot on McAfee's property; (2) McAfee was familiar with the layout of Faull's house; (3) McAfee and his associates were in the vicinity of Faull's house on the night of the murder; (4) McAfee had access to a Taser; (5) Faull died from a gunshot wound to the head and was also tortured with a Taser prior to his death; (6) McAfee took steps to conceal his whereabouts from the police after the murder, fled from Belize, and used deception in the course of his flight; and (8) McAfee was the only suspect in Faull's murder.   While these allegations are consistent with a theory that McAfee participated in the murder of Faull, they are insufficient to plausibly suggest that McAfee oversaw the torture of Faull with a Taser and either personally shot Faull in the head or directed Samantha Vanegas to do so.   *See Twombly*, 550 U.S. at 554 (alleging parallel conduct or interdependence, without more, is insufficient to plausibly allege a contract, combination, or

---

[14] The second amended complaint does not explain the basis for the "information and belief," and the other allegations of the second complaint do not, as explained in more detail, *infra*, make such a conclusion plausible.

conspiracy under the Sherman Act because, while the conduct is consistent with conspiracy, it is equally as consistent with other unilateral business practices).   Thus, I recommend that the Court find that the second amended complaint fails to support a finding of liability and deny Plaintiff's renewed motion for default judgment.[15]

Plaintiff's argument that McAfee's flight from law enforcement and the deception he employed in that flight establishes his liability (Doc. No. 82, at 22-23) does not change this conclusion.   First, Plaintiff's reliance on the quotation from Wigmore regarding falsehood and fraud is inapposite.   That quotation reads:  "[I]t has always been understood . . . that a party's falsehood or other fraud *in the preparation or presentation of his cause*, his fabrication or suppression of evidence by bribery or spoliation, and all similar conduct, is receivable against him as an indication of his conscious ness that his cause is a weak or unfounded one; and from that consciousness may be inferred the fact itself of the cause's lack of truth and merit."   *Busbee v. Quarrier*, 172 So. 2d 17, 22 (Fla. 1st Dis. Ct. App. 1965) (quoting *Wigmore on Evidence*, Vol. 2 (3rd ed.), Section 278, page 120)) (emphasis added).   The quotation, however, relates to conduct during litigation, and there has been no allegation that McAfee has engaged in falsehood or fraud during this litigation.   Second, evidence of flight does not—as Plaintiff's quotation from *Busbee* would suggest—require a presumption of guilt, but rather may support an inference of guilt.   *See Lynch v. McGovern*, 270 So. 2d 770, 772 (Fla. 4th Dist. Ct. App. 1972) (noting that language in *Busbee* that flight calls into operation the "presumption" of guilt was loose and imprecise because evidence of flight is sufficient to support an inference of guilt, not a presumption); *cf. Fenelon v. Florida*, 594 So. 2d 292, 294-95 (Fla. 1992) (directing that jury instruction on inferences that can be drawn from flight should not be given in criminal cases, but rather left to argument of counsel).

---

[15]  This analysis would not change if Plaintiff is, in fact, pursuing a tort theory other than battery.

Regardless, Plaintiff cites to no authority that allegations related to flight or falsehood and fraud, standing alone, are sufficient to bring a tort claim across the line of plausibility, and, as explained above, I recommend that the Court find that the well-pleaded allegations of the second amended complaint, when read together, do not do so.   Ultimately, while Plaintiff's allegations about McAfee's flight and the deceptions he employed during flight might be consistent with an inference that he participated in Faull's murder, I recommend that the Court find that those allegations are insufficient to nudge Plaintiff's claims across the line from conceivable to plausible.

## V.       RECOMMENDATION.

In light of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court **DENY** Plaintiff's Dispositive Motion for Default Judgment Against Defendant John McAfee on the Issue of Liability (Doc. No. 82).

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on November 15, 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE