# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ESTATE OF GREGORY V. FAULL,**

      **Plaintiff,**

**v.**                                          **Case No:   6:13-cv-1746-Orl-31KRS**

**JOHN MCAFEE,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT AND TO HAVE IT DEEMED SERVED BY U.S. MAIL AND EMAIL (Doc. No. 92)**
>
> **FILED:**    **March 1, 2017**

**I.**    **BACKGROUND.**

The Estate of Gregory V. Faull (the "Estate") filed the first complaint in this case on November 8, 2013, naming John McAfee, Samantha Vanegas and Amy Herbert as Defendants. The Estate alleged that Defendants acted in a negligent or intentional manner resulting in the death of Faull in violation of Florida's Wrongful Death Act, Fla. Stat. §§ 768.16-768.26. The Estate also alleged causes of action for negligence and battery, and it sought punitive damages. Doc. No. 1. The Estate filed an amended complaint on December 5, 2013, alleging the same causes of action against the same Defendants. Doc. No. 12.

Process was served on McAfee on December 4, 2014, Doc. No. 39, but McAfee failed to appear in the case. Accordingly, on January 27, 2015, the Clerk of Court issued a default against McAfee. Doc. No. 41. The Estate failed to effect service of process on Vanegas and Herbert. On April 27, 2015, the Estate dismissed the claims against these Defendants without prejudice. Doc. Nos. 47-49.

On June 16, 2015, the Estate filed a motion for entry of a default judgment against McAfee. Doc. No. 50. On October 16, 2015, the Court determined that the allegations of the amended complaint were "too vague and conclusory to sustain a default judgment against McAfee as to the wrongful death claim." Doc. No. 55, at 2. The Court also granted the Estate's request to file a second amended complaint. *Id.*

The Estate filed a second amended complaint on October 27, 2015. In this complaint, the Estate alleged that McAfee, the only Defendant, violated Florida's Wrongful Death Act by planning, assaulting, battering, torturing and intentionally killing Faull or directing and conspiring with others to do so. Many of the allegations in the second amended complaint were based on "information and belief." Doc. No. 57. The second amended complaint was served on McAfee on May 28, 2016, Doc. No. 78, but he again failed to appear. The Clerk entered a default against McAfee on June 20, 2016. Doc. No. 80. The Estate filed a renewed motion for entry of a default judgment on July 27, 2016. Doc. No. 82. On January 12, 2017, the Court found that the Estate failed to allege well-pleaded facts in the second amended complaint that plausibly showed that McAfee was responsible for the murder of Faull. It, therefore, denied the renewed motion for entry of a default judgment. Doc. No. 90, at 6-7.

The Estate took no further action to prosecute this case for more than a month after the Court denied the renewed motion for a default judgment. Now, after the Court issued an order to show

cause why the case should not be dismissed for failure of prosecution, the Estate seeks to file a third amended complaint based, in part, on information contained in a documentary film about McAfee. In support of the motion, the Estate filed a transcript of the film prepared by a court reporter, Doc. No. 92, at 7-28 ("Transcript")[1], and a proposed third amended complaint, *id.* at 29-49.

## II. ANALYTICAL STANDARD.

Federal Rule of Civil Procedure 15(a) requires that leave to amend a complaint should be freely given when justice so requires. However, as the Supreme Court recognized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend may be denied based on the factual circumstances of the case, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." The United States Court of Appeals for the Eleventh Circuit has found that denial of leave to amend based on futility is justified when the complaint as amended would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)(quoting *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 444 (11th Cir. 1996)).

## III. PROPOSED NEW ALLEGATIONS IN THE THIRD AMENDED COMPLAINT.

The new, substantive facts that the Estate proposes to allege in the third amended complaint are as follows:

> 67. By the night of the murder, McAfee had come to trust and utilize for making payments of McAfee's money to various McAfee confederates and third

---

[1] A substantial question exists regarding when the information in the documentary was available to counsel for the Estate. Although counsel for the Estate stated that the documentary was released in September 2016, the Transcript bears a court reporter certification dated October 26, 2013. Doc. No. 92, at 28. While the Transcript contains references to events after 2013, suggesting that the court reporter's certification date may wrong, counsel for the Estate offered no evidence to explain the discrepancy or otherwise authenticate the Transcript.

parties, one of whom being Cassian Chavarria. After McAfee's dogs were poisoned Thursday night, November 8, 2012, the next morning, November 9, 2012, McAfee requested that Chavarria deposit $5,000.00 of McAfee's personal funds into the bank account of a local violent male, Eddie McKoy. Following McAfee's instructions, Chavarria put the money into McKoy's account on or about Friday, November 9, 2012.

68. The purpose of this deposit of McAfee's funds into the McKoy bank account by Chavarria, was to solicit and to pay for a contract murder at McAfee's direction and funding of Gregory V. Faull, Plaintiff's decedent.

69. At the behest and direction of McAfee, one or more of the three (3) women Amy Herbert (a.k.a. Emshwiller), Samantha Vanegas (a.k.a. Herrera), and/or Marcia Novelo, appeared at Faull's residence and went inside where Faull was located in his home early on November 11, 2012 in a designed effort to distract Faull from the approaching murderer who would shoot and kill Faull.

70. Once distracted by one or more of the three (3) women, McKoy was able with their assistance or alone to subdue, torture and to then murder Faull in his home by a bullet to Faull's head and brain, killing him, and all done in consideration of the $5,000 which had been paid to McKoy's account by Chavarria at McAfee's request.

71. Early in the morning of November 11, 2012, McKoy after the torture and contract murder was carried out, left Faull dead in his residence. McKoy called Chavarria and requested that he pick him up, which Chavarria did, at a place nearby and about 600 feet from Faull's house.

72. In the final moments of Faull's life, Faull recognized each of the people in his home who were physically, emotionally and verbally assaulting him before his death, and as well, their close association with John McAfee.

73. As a result, Faull appreciated McAfee as being in charge and directing the actions of his assailants, McKoy, and the females who were with McKoy also in Faull's home, and that McAfee had given orders to inflict bodily harm on Faull, intimately resulting in Faull's injuries, torture and death.

74. McAfee paid for and hired McKoy to torture and shoot Faull, who was killed by a bullet placed that night into Faull's head.

84. John McAfee planned and hired a third person, McKoy, who assaulted, battered, tortured and intentionally killed Gregory Faull. McKoy worked alongside others McAfee directed and provided to assist in the murder plot.

Doc. No. 92, at 44-45, 47.

The information in the Transcript that the Estate contends support these allegations are as follows:

> Cassian Chavarria:   I went to work for [McAfee], cleaning, raking the beach, taking care of the pool.   Eventually, he reached to the point where he said, "Cassian is one of the most honest Belizeans I have ever met since I have been here."   He really started to trust in me.   Then he started letting me get the money to pay the employees, you know? . . . Yeah, for certain people that he would just say, "Cassian, I want you to send $4,000.   This is the account number." . . .   It was Thursday night, the dogs were poisoned.   The following morning, sometime around 9:00, John called me, he said, "take this money, $5,000, and go put it in this guy's account." . . . Eddie Mac.   "Go put it in his account."   So I went there on Friday, put the money in his account and went back home . . . .   Sunday morning, the night of the murder, Eddie called me probably around 3:30, 4:00 in the morning, he said, "Come pick me up." And I said, "Okay, I'm coming for you . . . ."   I was looking by the roadside, but I didn't see him.   And then when I approached Mata Grande Shop, I coming out of the bushes.   It was like 600 feet from Greg's house.   I didn't put it together until after the fact.   Then I realized that this $5,000 was for him to do that . . . to kill the guy.   You, know.   To kill the guy.

Transcript, at 67-70.[2]

> Santiago Ciau [Belize Police Inspector]:   [Faull] was found upstairs in his living room on his back in a pool of blood at about 7:00 a.m. by the housekeeper   . . . . The cause of death was massive trauma, brain damage due to a gunshot wound. It was from close range. . . . Amy [Herbert a.k.a. Emshwiller] has indicated that Marcia Novelo lured Greg to his house, upstairs and she would do a striptease for him and get him attracted, so that she could keep the door open so that this guy, McKoy, who John McAfee hired to do the execution . . . . At this point in time, we are now looking at scientific evidence, forensic, we need – that's the only way we need to go forward from here now, because there were never an eye witness.

Transcript, at 54-55, 66, 76.

The Estate, however, does not propose to allege McKoy's statements denying that he was paid to and did kill Faull, as follows:

> [Reporter]:   So around that time [when Faull was killed], did John ask you to do something and give you any money, like $5000? . . .
>
> Eddie McKoy:   No . . . .

---

[2] Page references to the Transcript are to the original page numbers, not to the page numbers assigned when the document was filed in CM/ECF.

> [Reporter]: So you didn't get $5,000 wired into your account?
>
> Eddie McKoy: No, never. No . . . .
>
> [Reporter]: So you were not hired by John to kill Greg Faull?
>
> Eddie McKoy: No. . . . I was never paid by John to kill anyone.

Transcript, at 71-72.

**IV.   ANALYSIS.**

Allegations in a complaint must have "evidentiary support" to the best of the party's "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b)(3). While counsel for the Estate asserts that they have conducted an investigation, Doc. No. 87, at 2-11, many of the facts on which the Estate wishes to rely in the third amended complaint do not have evidentiary support and other facts the Estate wishes to allege are contradicted, in whole or in part, by statements in the Transcript. The Estate has had more than three years since the filing of the case to conduct discovery, including interviewing or deposing witnesses and gathering documents and tangible evidence to support the allegations in its third amended complaint. Therefore, as discussed in more detail below, I recommend that the Court deny the motion for leave to amend as futile and dismiss the case.

Paragraph 67 of the proposed third amended complaint alleges that McAfee instructed Chavarria to deposit money into McKoy's account on November 8, 2012, and that Chavarria made the deposit on November 9, 2012. These allegations are supported by Chavarria's statement. These allegations are, however, contradicted by McKoy's statements. Paragraph 68 of the proposed third amended complaint alleges that the reason for the payment of this money was to hire McKoy to kill Faull. This allegation is based on Chavarria's after-the-fact conclusion, not on personal knowledge. This allegation is also contradicted by McKoy's statements.

Paragraph 69 of the proposed third amended complaint alleges that McAfee directed Amy Herbert a.k.a. Emshwiller, Samantha Vanegas a.k.a. Herrera "and/or" Marcia Novelo to go to Faull's home on November 11, 2012 to distract Faull from the approaching murderer. The evidentiary support for this allegation is the hearsay statement of Amy Herbert a.k.a. Emshwiller that Marcia Novelo acted to distract Faull from the approaching murderer. There is no reason to believe that the Estate can obtain this information in an admissible form. The Estate was unable to serve Amy Herbert when she was named a defendant in the first two complaints. There is no information showing that Inspector Ciau has a written or recorded statement from Amy, and no information that counsel for the Estate interviewed her. Finally, the Estate does not appear to credit Amy's statement, because it proposes to allege that one or more of the three women went to Faull's house to distract him, not just Novelo as Amy reported.

Paragraph 70 of the proposed third amended complaint essentially restates the allegations in paragraphs 68 and 69. For the reasons discussed above, this paragraph has no evidentiary support.

Paragraph 71 of the proposed third amended complaint alleges that after McKoy tortured and murdered Faull, he asked Chavarria to pick him up at a place about 600 feet from Faull's house. Chavarria's statements provide evidentiary support for McKoy's request for a ride and the location where he picked up McKoy. However, as discussed above, Chavarria did not state any personal knowledge to support his speculation that McKoy was hired to kill Faull.

Paragraphs 72 and 73 of the proposed third amended complaint allege Faull's state of mind during the time preceding his death. There is no evidentiary support for these allegations and no reason to believe such support could be developed. As Inspector Ciau stated, no eyewitness to the murder has come forward.

Paragraphs 74 and 84 of the proposed third amended complaint repeat earlier allegations that McAfee hired McKoy to kill Faull and that McKoy did so working along with others McAfee directed and provided to assist in the murder.   There is no evidentiary support for these allegations.

In sum, the proposed new allegations that have evidentiary support are that on November 8, 2012, McAFee instructed Chavarria to deposit $5,000 into McKoy's account, and Chavarria did so on November 9, 2012.   Faull was killed by a gunshot wound to the head on November 11, 2012. In the early morning hours of November 11, 2012, Chavarria picked up McKoy at a location 600 feet from Faull's house.   While these allegations are consistent with the Estate's theory that McKoy killed Faull, they are insufficient to plausibly allege that McKoy, assisted by one or more of three women, tortured and killed Faull.   *See* Doc. No. 90, at 7.   When, as here, a complaint as amended would still fail to provide allegations sufficient to establish liability, denial of leave to amend is justified by futility.   *Cf. Burger King Corp.*, 169 F.3d at 1320 (noting that denying leave to amend is justified by futility when the complaint as amended would still be subject to dismissal).

Further delay in the case to permit counsel for the Estate to develop evidentiary support for a third amended complaint is not warranted.   Faull died on November 11, 2012.   This case commenced approximately one year later.   In the more than three years since this case was filed, counsel for the Estate have not shown that they obtained statements from individuals with personal knowledge of relevant information or gathered tangible evidence, such as bank records or DNA evidence, to support the allegations of the proposed third amended complaint.   Under these circumstances, *Foman* also supports denial of the motion for leave to amend due to repeated failure to cure deficiencies by amendments previously allowed.

For all of these reasons, I recommend that the Court find that justice does not require affording the Estate a third opportunity to amend its complaint and that the Court dismiss the case.

The Court warned counsel that the case was subject to dismissal for failure of prosecution. The Estate's attempt to show cause why that should not happen fails because many of the allegations of the proposed third amended complaint continue to lack evidentiary support.

I realize that dismissal may effectively be with prejudice because the two-year statute of limitations under Florida's Wrongful Death Act has expired, Fla. Stat. § 95.11(4)(d). Because the Court has given counsel for the Estate ample time to develop evidentiary support for its claim, and it has failed to do so, the Court is not required to keep the case open indefinitely. *See, e.g., Surtain v. Hamlin Terrace Found.,* 789 F.3d 1239 (11th Cir. 2015) (affirming sua sponte dismissal of one cause of action after denial of motion for a default judgment); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1015 (11th Cir. 2005)(affirming district court's denial of motion to file fourth amended complaint as futile and dismissing the case).

### IV. RECOMMENDATION.

For the reasons discussed above, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Leave to File Third Amended Complaint and to Have It Deemed Served by U.S. Mail and Email (Doc. No. 92), **DISMISS** the case, and **DIRECT** the Clerk of Court to close the file.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on March 13, 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy